IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

McELROY COAL COMPANY,

    Plaintiff,

v.                                            Civil Action No. 5:07CV41
                                                                  (STAMP)

UNITED MINE WORKERS OF AMERICA,
INTERNATIONAL UNION and LOCAL 1638,
UNITED MINE WORKERS OF AMERICA,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
VACATING IN PART ARBITRATOR'S AWARD**

I.  Procedural History

The plaintiff in the above-styled civil action, McElroy Coal Company ("McElroy"), filed a complaint in this Court on March 15, 2007, seeking vacatur of an arbitration award in favor of the defendants. This matter currently comes before this Court on the parties' cross-motions for summary judgment. These motions have been fully briefed and are now ripe for review. For the reasons set forth below, this Court finds that the plaintiff's motion for summary judgment must be granted in part and denied in part, that the defendants' motion for summary judgment must be granted in part and denied in part, and that the arbitrator's award must be upheld in part and vacated in part.

II. Facts

The facts giving rise to this action are not in dispute. The parties are signatories to a collective bargaining agreement known as the National Bituminous Coal Wage Agreement of 2002 ("the 2002 NBCWA"). Article IA, Section (a) of the 2002 NBCWA provides:

> The production of coal, including removal of overburden and coal waste, preparation, processing and cleaning of coal and transportation of coal (except by waterway or rail not owned by Employer), repair and maintenance work normally performed at the mine site or at a central shop of the Employer and maintenance of gob piles and mine roads, and work of the type customarily related to all of the above shall be performed by classified Employees of the Employers covered by and in accordance with the terms of this Agreement. Contracting, subcontracting, leasing and subleasing, and construction work, as defined herein, will be conducted in accordance with the provisions of this Article.
>
> Nothing in this section will be construed to diminish the jurisdiction, express or implied, of the United Mine Workers.

(Stip. Rec., Tab 10.)

Article IA, Section (g) states:

> (1) Transportation of Coal - The transportation of coal as defined in paragraph (a) may be contracted out under the Agreement only where contracting out such work is consistent with the prior practice and custom of the Employer at the mine; provided that such work shall not be contracted out at any time when any Employees at the mine who customarily perform such work are laid off;
>
> (2) Repair and Maintenance Work - Repair and maintenance work of the type customarily performed by classified Employees at the mine or central shop shall not be contracted out except (a) where the work is being performed by a manufacturer or supplier under warranty, in which case, upon written request on a written request on a job-by-job basis, the Employer will provide to the Chairman of the Mine Committee a copy of the applicable

2

> warranty or, if such copy is not reasonably available, written evidence from a manufacturer or a supplier that the work is being performed pursuant to warranty; (b) where the Employer does not have available equipment or regular Employees (including laid-off Employees at the mine or central shop) with necessary skills available to perform the work at the mine or central shop.

On Saturday, September 2, 2006, McElroy employed an outside contractor to replace the bearings on the No. 13 belt used in the McElroy Mine Preparation Plant to wash and remove impurities from coal. The work required sixteen man-hours to complete.

Subsequently, the defendants, United Mine Workers of America International Union and Local 1638, United Mine Workers of America (collectively, "the Union") filed a timely grievance complaining that the work given to the outside contractor violated the 2002 NBCWA. Pursuant to Article XXIII of the 2002 NBCWA, the dispute was ultimately submitted for binding arbitration.

In the arbitration proceedings, the Union argued that McElroy had violated Article IA Section (a) of the 2002 NBCWA by hiring an outside contractor to repair the No. 13 belt when unit members of the Union had been available to perform the work, which, they argued, was maintenance work of the type that Union employees traditionally performed. The Union requested that the arbitrator uphold the grievance and direct a compensatory award to either the named individuals in the grievance or to the Local Union. The Union also requested an order requiring McElroy to cease and desist.

According to McElroy, the work fell within the exceptions to the prohibition against contracting out in Article IA(g)(2)(b) of the 2002 NBCWA. McElroy further contended that it had not breached the 2002 NBCWA for the following reasons: first, McElroy asserted that it had properly posted the job opportunity; second, no Union members had expressed an interest in or willingness to perform the repair work; and, third, the 2002 NBCWA prohibited McElroy from requiring Union members to work on the date in question because it was a holiday weekend.

In his February 15, 2007 decision, the arbitrator determined that the work in question properly fell within Article IA, Section (a) and that the Union's grievance should be upheld because the work opportunity which McElroy posted was an indirect means of communicating the availability of the work to Union members, whereas direct communication would have been reasonable. Accordingly, the arbitrator ordered McElroy to pay to the Union's local unit the reasonable value of the sixteen-man hours involved in changing the No. 13 belt. The arbitrator declined, however, to issue a cease-and-desist order because he found that McElroy's actions were not persistent, ongoing, willful, or pernicious.

On March 15, 2007, McElroy brought this action, seeking an order vacating the arbitrator's award. The parties' cross-motions for summary judgment, and responses thereto, then followed.

III. <u>Applicable Law</u>

A. <u>Summary Judgment Standard</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992)(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)).

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson,</u> 477 U.S. at 256. The Court must perform a threshold inquiry to determine whether a trial is needed -- whether, in other words, "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250; <u>see also</u> <u>Charbonnages de France v. Smith</u>, 597

F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.") (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.   Review of Arbitration Award

This Court recognizes the well-known rule that federal courts should refuse to review the merits of an arbitration award under a collective bargaining agreement. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564 (1960). "[S]o far as the arbitrator's decision concerns construction of the contract, the courts have no business

overruling him because their interpretation of the contract is different from his." Enterprise Wheel, 363 U.S. at 599.

Accordingly, federal courts apply the following rule:

> [T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 38 (1987) (emphasis added). Additionally, as the United States Court of Appeals for the Fourth Circuit has held, an arbitration award is enforceable even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion, and may be reversed only when arbitrators understand and correctly state the law, but proceed to disregard it. Upshur Coals Corp. v. United Mine Workers of America, Dist. 31, 933 F.2d 225, 229 (4th Cir. 1991).

## IV. Discussion

### A. The Parties' Contentions

In its motion for summary judgment, McElroy argues that this Court should vacate the arbitrator's award because it does not draw its essence from the NBCWA. In support of this argument, McElroy observes that the NBCWA permits McElroy to hire non-union workers for certain activities when union workers are not available.

7

McElroy maintains that no union members responded to its written notice of available work for Saturday, September 2, 2006 to perform sixteen hours of repair and maintenance work to the No. 13 belt at the McElroy Mine Preparation Plant and that, therefore, no union employees were available on that date. McElroy also contends that the Union failed to prove loss of work opportunity by any of its members and that the arbitrator failed to find any such loss. McElroy argues that no evidence exists to support a conclusion that union workers lacked access to the posted notice or knowledge of the opportunity to work and, further, that under the terms of NBCWA, McElroy could not require union employees to work on the day in question. Finally, McElroy asserts that the arbitrator ignored binding Arbitration Review Board ("ARB") decisions. For these reasons, McElroy asserts, the arbitration award does not draw its essence from the contract.

Additionally, McElroy claims that the arbitrator's award is punitive because the payments are directed to the union, not to any individual employees who would have had worked on September 2, 2006. As support for this contention, McElroy states the facts do not establish that there were any employees who would have worked on that date.

In response, the Union argues that McElroy is effectively asking this Court to undertake a review of the arbitrator's factual and legal findings, which is prohibited under Fourth Circuit

8

precedent, even when the arbitrator has made errors of law or fact. The Union also claims that the role of resolving conflicts between ARB precedents is rightly that of the arbitrator, not the courts.

Finally, the Union maintains that the arbitrator's award of relief running to the union is compensatory, not punitive and that, therefore, the arbitrator's award in this case is consistent with contractual and arbitral precedent.

In its motion for summary judgment, the Union repeats its argument that decisions by arbitrators are to be accorded great deference by the federal courts, and that this deference removes even errors of fact or law from review by the courts. The Union also argues that the parties bargained for final and binding arbitration, including remedy, without recourse to the courts in the collective bargaining agreement. Accordingly, the Union contends, judicial review of the arbitrator's award on the merits would violate the contract between the parties. Finally, the Union claims that the arbitrator's award draws its essence from the collective bargaining contract, that the arbitrator did not exceed the scope of his authority, and that the arbitrator's remedy was appropriate.

McElroy's response contends that deference to an arbitrator's decision is not absolute and that where an arbitration decision fails to draw its essence from the collective bargaining agreement, violates clearly established public policy, or merely reflects the

arbitrator's own notions of fairness, the federal courts have jurisdiction to vacate the award. McElroy also argues that the arbitrator ignored the express terms of the NBCWA, and that his decision exceeded his authority under the NBCWA by awarding damages directly to the Union.

B. <u>Review of the Arbitrator's Award</u>

["F]or matters within the scope of an arbitration clause, the arbitrator's award is final and binding. A court does not 'sit to hear claims of factual or legal error by an arbitrator,' and must defer to the arbitrator 'as long as the arbitrator is even arguably construing or applying the contract.'" <u>Champion Intern. Corp. v. United Paperworks Intern. Union, AFL-CIO, et al.</u>, 168 F.3d 725, 728 (4th Cir. 1999) (quoting <u>United Paperworkers Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 38 (1987)). The courts' role is to determine "only whether the arbitrator did his job--not whether he did it well, correctly, or reasonably, but simply whether he did it" <u>Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int'l Union</u>, 76 F.3d 606, 608 (4th Cir. 1996) (citing <u>Remmey v. PaineWebber, Inc.</u>, 32 F.3d 143, 146 (4th Cir. 1994)). However, "[A] court must vacate an arbitrator's award if it violates clearly established public policy, fails to draw its essence from the collective bargaining agreement, or reflects merely the arbitrator's personal notions of right and wrong." <u>Champion Intern. Corp. v. United</u>

Paperworks Intern. Union, AFL-CIO, 168 F.3d 725, 729 (4th Cir. 1999) (citing Mountaineer Gas, 76 F.3d at 608).

Given the parties' arguments before this Court, the pivotal question in this case is whether the arbitrator's decision draws its essence from the collective bargaining agreement. An arbitrator's decision draws its essence from the collective bargaining agreement "if in any rational way the arbitrator's interpretation can be derived from that agreement as viewed in the light of its language, its context, and any other indicia of the parties' intention . . . absent any evidence of fraud, deceit or breach of the duty of fair representation . . . ." Crigger v. Allied Chem. Corp., 367 F. Supp. 1133, 1139 (S.D. W. Va. 1973).

In this case, the record before this Court supports a conclusion that the arbitrator, in viewing the collective bargaining agreement in the light of its language and context, drew his decision from the essence of the contract. The arbitrator heard testimony from a number of witnesses, reviewed the pertinent provisions of the NBCWA, determined that Article IA, Section (a) was the applicable provision to the work on the No. 13 belt, considered the dispute in light of prior ARB decisions, and concluded that McElroy's indirect communication did not comply with its "obligation to take reasonable action to validate the meaning and effect of the contract." (Pl.'s Compl. Ex. C.) The arbitrator further concluded that under the circumstances of the case, "direct

11

communication would have been reasonable." (Id.) On these facts, and in light of the substantial deference courts must give to arbitration awards, this Court concludes that it should uphold the arbitrator's decision that McElroy violated the NBCWA by failing to notify the Union workers directly of the work opportunity to repair the No. 13 belt on September 2, 2006.

Having determined that the arbitrator's decision to uphold the grievance should not be vacated, this Court now turns to the question of whether the award fashioned by the arbitrator exceeded the scope of his authority by directing McElroy to pay the reasonable value sixteen man-hours of labor to the local unit of the Union. Compensatory damages may be awarded when a breach of a bargaining agreement causes a monetary loss. Westinghouse Elec. Corp., Aerospace Div. v. Int'l Bhd. of Elec. Workers, 561 F.2d 521, 523-24 (4th Cir.). By contrast, punitive damages should not be awarded absent a showing of willful or wanton conduct. Id. However, if the parties have expressly provided for punitive damages in the collective bargaining agreement, an arbitrator may impose a punitive award. Island Creek Coal Co. v. District 28, United Mine Workers of America, 29 F.3d 126, 129 (4th Cir. 1994).

An award is compensatory where a party suffers "some legally cognizable loss, be it manifestly monetary or measurable in monetary terms." Baltimore Regional Joint Bd. v. Webster Clothes, Inc., 596 F.2d 95 (4th Cir. 1979). In this case, the arbitrator

awarded the payment of money to the local unit of the Union. However, nothing in the record indicates that the Union, as an entity, suffered any cognizable loss. Nor, for that matter, does the record indicate that any Union member suffered monetary loss as a result of the contracting out of the repair work on the No. 13 belt. No evidence on the record suggests that any Union member was unaware of the opportunity to do the repair work on September 2, 2006, or that any member expressed a desire--either before or after--to do the repair work on the date in question and was refused the opportunity. In short, no facts establish that any Union members would have worked on this date but for McElroy's decision to give the work to an outside contractor. Consequently, this Court finds that the arbitrator's award is not compensatory. As a punitive award, it must therefore be vacated unless the NBCWA contains a provision expressly authorizing a punitive award or unless McElroy's conduct was willful or wanton. However, the Union does not contend that the NBCWA expressly provides for a punitive award, and the arbitrator found that McElroy's conduct was not willful or wanton, stating that, "McElroy acted in good faith in a situation that is something of a close call." (Pl.'s Compl. Ex. C.) For these reasons, this Court concludes that the monetary award granted by the arbitrator must be vacated.

## V. Conclusion

For the reasons set forth above, it is ORDERED that the motion for summary judgment by the plaintiff, McElroy Coal Company, be GRANTED IN PART and DENIED IN PART.  Specifically, it is ORDERED that the plaintiff's motion for summary judgment be GRANTED on the issue of damages and DENIED on the issue of liability.  It is further ORDERED that the motion for summary judgment by the defendants, United Mine Workers of America International Union and Local 1638, United Mine Workers of America, be GRANTED IN PART and DENIED IN PART.  Specifically, it is ORDERED that the defendants' motion for summary judgment be GRANTED on the issue of liability and DENIED on the issue of damages.  Accordingly, the arbitrator's award is hereby UPHELD IN PART and VACATED IN PART.  It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    March 31, 2008

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE