IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

McELROY COAL COMPANY,

    Plaintiff,

v.                                              Civil Action No. 5:07CV41
                                                           (STAMP)
UNITED MINE WORKERS OF AMERICA,
INTERNATIONAL UNION and LOCAL 1638,
UNITED MINE WORKERS OF AMERICA,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION
AND REMANDING CASE TO ARBITRATOR**

I. Procedural History

This Court previously granted in part and denied in part the plaintiff's motion for summary judgment and granted in part and denied in part the defendants' motion for summary judgment in the above-styled civil action. The defendants now move this Court to reconsider a portion of this Court's judgment. Specifically, the defendants contest this Court's vacatur of the arbitrator's grant of a monetary award as punitive. The plaintiff filed a response in opposition to the defendants' motion for reconsideration, and the plaintiff replied. After considering the parties' memoranda and the relevant law, this Court finds that the defendants' motion for reconsideration should be granted.

II. Applicable Law

This Court construes the defendants' motion for reconsideration as a motion to alter or amend judgment pursuant to

Federal Rule of Civil Procedure 59(e). The United States Court of Appeals for the Fourth Circuit has recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. See Pacific Ins. Co. v. American Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). "Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Id. A Rule 59(e) motion may not be used to relitigate old matters and is an extraordinary remedy that should be used sparingly. See id. It is improper to use such a motion to ask the court to "rethink what the court has already thought through-- rightly or wrongly." Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

III. Discussion

The defendants argue that this Court should alter or amend its decision vacating the arbitrator's monetary award as punitive. According to the defendants, the basis for the arbitrator's award is not clearly punitive or compensatory and, based upon this ambiguity, this action should be remanded to allow the arbitrator to clarify the basis for his award. This Court agrees.

2

In cases where the basis for an arbitrator's remedy is ambiguous or unclear, the proper course for federal courts is to remand to the arbitrator for clarification rather than to vacate the award. See <u>Cannelton Indus., Inc. v. Dist. 17, UMWA</u>, 951 F.2d 591, 592-94 (4th Cir. 1991)(remanding for clarification of basis for award by arbitrator); <u>Enter. Wheel & Car Corp. v. Steelworkers</u>, 269 F.2d 327, 331-32 (4th Cir. 1959)(remanding to permit arbitrator to ascertain specific amounts due the grievants for lost work time). However, courts may properly vacate an arbitrator's award which is unambiguously punitive. See <u>Island Creek Coal Co. v. District 28, UMWA</u>, 29 F.3d 126 (4th Cir. 1994). Thus, at this juncture of the proceedings, the issue before this Court is whether the arbitrator's monetary award of the reasonable value of the time involved in the work performed by the outside contractor has a clearly punitive purpose.

The defendants argue that the arbitration award in this action is ambiguous, incomplete, or both. In their view, this case is more similar to the circumstances in <u>Cannelton</u>, which resulted in remand to the arbitrator for clarification of the basis for the remedy awarded. See <u>Cannelton</u>, 951 F.2d at 592-94. The plaintiff, on the other hand, contends that this Court must find the award unambiguously punitive. The plaintiff relies heavily on <u>Island Creek Coal</u> because one of circumstances supporting the vacatur in that action was direct payment of a monetary award to the union, a

3

circumstance also present in this action.  From the plaintiff's perspective, Island Creek Coal is controlling.  Each party's reliance on one case to the exclusion of the other is misplaced, for neither Cannelton nor Island Creek Coal is directly on point.

In Cannelton, the employer had violated certain advance notice requirements regarding available work time which had been set forth in a prior settlement agreement between the parties.  Cannelton, 951 F.2d at 592-93.  The employer had also failed to comply with a prior arbitration award granted in favor of the grievants in that case.  Id.  Although the grievance before the Cannelton arbitrator alleged that the employer had violated the terms of the National Bituminous Coal Wage Agreement of 1988 ("NBCWA") by hiring outside contractors to perform "repair and maintenance work" as opposed to "construction work," which was permitted under the terms of the agreement, the arbitrator declined to construe those terms to determine whether the work was considered repair and maintenance or construction under the agreement.  Id. at 593.  Despite declining to decide whether the grieved work violated the relevant provisions of the NBCWA, the arbitrator nevertheless awarded the union monetary damages.

The district court vacated the Cannelton arbitrator's award based upon its finding that the award was punitive in nature because the arbitrator had failed to identify any cognizable loss suffered by the union employees.  Id. at 592.  The district court's

4

judgment vacating the arbitrator's award was itself then vacated on appeal. Id. at 595.

In vacating the district court judgment, the United States Court of Appeals for the Fourth Circuit observed that the arbitrator's decision was unclear as to whether the monetary damages had been awarded to punish the employer for having violated the advance notice requirements set forth in the prior settlement agreement between the parties and the terms of the prior arbitration award or to compensate union workers for damages flowing from a violation of the collective bargaining agreement. The court stated that if the arbitrator ordered monetary damages to compensate employees for the work they were entitled to perform under the collective bargaining agreement, the award might reasonably be construed as compensatory damages for a cognizable loss of union work and, therefore, would be permissible. Cannelton at 594. If, on the other hand, the monetary damages were ordered based upon violations of the settlement agreement and the prior arbitration award, the award was impermissibly punitive. Because the opinion did not make clear which violation served as the predicate for the award, or indeed whether the collective bargaining agreement had been violated at all, the court was unable to ascertain whether the nature of the award was punitive or compensatory. In light of this ambiguity, remand was necessary for the arbitrator to determine whether the grieved work violated the

collective bargaining agreement in any way justifying a compensatory award. Id. at 595.

Cannelton is not directly on point, however, because the arbitrator in that case declined to construe the terms of the collective bargaining agreement in reaching his decision and awarding damages, whereas here, the arbitrator construed the terms of the collective bargaining agreement and found that the plaintiff has violated them. Therefore, unlike Cannelton, there is no ambiguity in this case as to whether the award may have been predicated upon a violation of a previous settlement agreement or arbitration agreement rather than a violation of the collective bargaining agreement. Here, the arbitrator clearly found that the collective bargaining agreement had been violated. Accordingly, this Court rejects the defendants' suggestion that the ambiguity present is Cannelton is replicated in this action.

Likewise, the principal case upon which the plaintiff relies, Island Creek Coal, is not directly on point. There, the Fourth Circuit determined that an "enforcement penalty" to be paid directly to the union was punitive in nature. The court considered three relevant factors in reaching this conclusion: (1) nothing in the record established that the "enforcement penalty" for failure to comply with a previously issued cease and desist order was compensatory; (2) payment of the "enforcement penalty" was to be made directly to the union, not any individual grievant; and (3)

6

the arbitration award separately provided for compensatory damages to be paid to an individual grievant. The fact that direct payment to the union was only one of three factors the court considered suggests that such payment, though relevant, is not dispositive.

An important distinction between Island Creek Coal and this case is that the arbitrator in Island Creek Coal awarded the "enforcement penalty" because the employer had not obeyed a cease and desist order. The arbitrator specifically noted that the monetary award to the union was granted as a means of enforcing the prior cease and desist order. Moreover, Island Creek Coal is distinguishable because there, the arbitrator granted a three-part remedy: (1) compensation for one-half shift pay at straight time to the individual grievant; (2) restatement of a prior cease and desist order; and (3) a $1,000.00 "enforcement penalty" against the employer for failure to comply with the previously issued cease and desist order. In this action, however, the arbitrator ordered no separate compensatory award distinct from the award to the union, and there was no previously disobeyed cease and desist order requiring a means of enforcement. The only similar factor is that the arbitrator directed payment to be made to the union rather than to an individual grievant or grievants. This similarity, by itself, forms an insufficient basis for this Court to conclude that the arbitrator's award is unambiguously punitive.

Although neither is directly on point, both <u>Cannelton</u> and <u>Island Creek Coal</u> do offer guidance. <u>Cannelton</u> is instructive because it establishes a benchmark from which to begin the inquiry for determining whether an arbitrator's award is unambiguously punitive. The relevant question from <u>Cannelton</u> is whether the arbitrator's monetary award in this action was granted because the plaintiff violated the collective bargaining agreement by contracting out work that union employees should have performed. If the award was not derived from the breach of the collective bargaining agreement, then the award was clearly punitive. If the award was derived from breach of that agreement, then whether the award is nonetheless punitive remains an open question and the next inquiry is whether the monetary remedy compensates for actual losses flowing from the breach. If the monetary damages are based upon "cognizable loss causally traceable to the breach," then such damages are compensatory. <u>Norfolk & W. Ry. Co. v. Bhd of Airline & S.S. Clerks</u>, 657 F.2d 596, 602 (4th Cir. 1981). Absent a loss caused by the breach, however, monetary damages are punitive. See <u>Dist. 17, Dist. 29, Local Union 7113, and Local Union 6023, UMWA v. Allied Corp.</u>, 735 F.2d 121, 127 (4th Cir. 1984) ("an arbitrator's award is not sustainable where the damages awarded exceeded any monetary loss caused by breach of the collective bargaining agreement").

Similarly, Island Creek Coal provides guidance by identifying the payment of an award to the union as a factor to be considered when determining whether the monetary damages are based upon cognizable loss causally traceable to the breach. However, other factors may also be important to this determination. See Eastern Assoc. Coal Corp. v. Dist. 17 and Local Union 9177, UMWA, No. 2:04-0641, 2006 WL 2819537 *9 (S.D. W. Va. Sept. 28, 2006).

The United States District Court for the Southern District of West Virginia considered such other relevant factors in Eastern Associated Coal Corp. v. District 17 and Local Union 9177, UMWA. See id. In that case, the employer was found to have violated the collective bargaining agreement by contracting out repair and maintenance work to cut out and remove concrete at the tail of an onsite processing belt during a vacation shutdown. The arbitration award at issue stated only that "'the union is entitled to be compensated for the amount of time that the outside contractor spent tearing out the concrete and removing it from beneath the 437 belt.'" Id. at *2 (quoting arbitration award).

The Eastern Associated Coal court, noting that it remained "[c]ognizant of the extraordinary deference accorded to arbitral awards," examined several aspects of the arbitration award which suggested that the remedy granted therein was punitive. First, the court found that the language of the remedy did not "spring from any associated findings regarding which, if any, classified

9

employees suffered a monetary loss resulting from the Agreement's violation." Id. at *8. Second, the court observed that the award was directed to be paid to the union, not any individual grievant. Id. Finally, the court found that the award was derived not from the classified-employee lost work time but rather to the time that outside contractor spent performing the grieved work. Id. Based upon these aspects of the award, the court concluded that the award did not appear to be designed to compensate for actual losses but to punish the employer for using outside contractors in violation of the collective bargaining agreement.

However, the court also recognized several aspects of the award which, in the context of the award in its entirety, potentially invoked a compensatory purpose:

> Specifically, five separate considerations suggest the arbitrator did not definitively resolve the issue of what, if any, compensatory award would be appropriate. First, the arbitrator noted, without further development, the union's position that 24 classified employees were not permitted to work during the vacation shutdown. Second, the award observes the grievants' explicit request for a make-whole remedy. Third, the award notes the testimony of one classified employee claiming to have been denied the opportunity to work during the vacation period. Fourth, the very language chosen by the arbitrator contains the word "compensated[,]" albeit without further development. Fifth, [one witness] testified that, in the past, [the employer] had summoned classified employees to work during a vacation period and that those employees were able and competent to perform the grieved work now under consideration.

Id. at *9. In light of the conflicting signals contained in the award, the court concluded that "the lack of supportive findings

10

indicative of a compensatory, rather than a punitive, award" left the issue unresolved. Remand was warranted to permit the arbitrator to clarify his position concerning the basis for the monetary award. Id. at **9-10.

This Court finds the analysis in Eastern Associated Coal persuasive and relevant to this action for determining whether the award granted is punitive or compensatory in nature. Here, as in Eastern Associated Coal, the arbitrator provided thorough reasoning to support his finding that the employer violated the collective bargaining agreement. However, the remedy portion of the award stated only: "The grievance is sustained in part and denied in part. McElroy is ordered to pay to the local union the reasonable value of the sixteen man-hours involved in changing the No. 13 belt." Thus, the question becomes whether the arbitrator definitively resolved the issue of whether the award granted was compensatory in nature. See Eastern Assoc. Coal Corp. v. Dist. 17 and Local Union 9177, UMWA, No. 2:04-0641, 2006 WL 2819537 *9 (S.D. W. Va. Sept. 28, 2006).

Here, again as in Eastern Associated Coal, some considerations suggest a punitive nature to the award, while others indicate a compensatory purpose. Potentially punitive aspects include (1) the lack of findings regarding which, if any, bargaining unit employees suffered a monetary loss from the plaintiff's breach of the collective bargaining agreement; (2) the calculation of the amount

11

of the award being derived from the time spent by the outside contractors performing the grieved work rather than from the time of work lost by any bargaining unit employee as a result of the breach; and (3) the payment of the award to the union rather than to any individual grievant.  These considerations lead to a conclusion that the award is intended to punish the plaintiff for breaching the collective bargaining agreement, not to compensate union employees who suffered monetary loss resulting from the breach.

By contrast, the following aspects of the award suggest the possibility that the arbitrator intended the award to be compensatory: (1) the arbitrator's decision acknowledges the grievants' request "to be made whole;" (2) the award notes the testimony of one bargaining unit employee claiming that he could have worked more hours than he did on the date in question; and (3) the arbitrator crafted the monetary award in terms of payment of "reasonable value" for the number of man-hours required to perform the grieved work.  Id.

In sum, some aspects of the award suggest a punitive purpose, whereas others indicate a compensatory purpose.  Because of these conflicting signals, this Court finds that the basis upon which the arbitrator made the award is ambiguous.  Mindful of the extraordinary deference courts are to accord arbitration awards, this Court concludes that the proper remedy is to remand this

action to the arbitrator for clarification of the basis of the award. Accordingly, the defendants' motion for reconsideration will be granted.

## IV. Conclusion

For the reasons stated above, the plaintiff's motion to alter or amend is GRANTED. The prior judgment of this Court is amended to prevent manifest injustice. It is ORDERED that this case be REMANDED to the arbitrator for clarification of the basis for the monetary award granted to the defendants. The defendants shall provide the Clerk of this Court with the address of Arbitrator Michael L. King. It is further ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein and to Arbitrator Michael L. King at the address to be provided by the defendants. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:   February 10, 2009

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE